No. 26-1304

IN THE

# United States Court of Appeals for the Ninth Circuit

STATE OF NEVADA *ex rel.* NEVADA GAMING CONTROL BOARD,

*Plaintiff-Appellee,*

v.

KALSHIEX, LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:26-cv-406 (Du, J.)

## KALSHIEX LLC'S EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL OF THE DISTRICT COURT'S MARCH 2, 2026 REMAND ORDER [RELIEF NEEDED AS SOON AS POSSIBLE]

GRANT R. MAINLAND
MATTHEW J. LAROCHE
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

DENNIS L. KENNEDY
PAUL C. WILLIAMS
BAILEY ❖ KENNEDY
8984 Spanish Ridge Ave.
Las Vegas, NV 89148

March 13, 2026

NEAL KUMAR KATYAL
JOSHUA B. STERLING
COLLEEN E. ROH SINZDAK
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7505
nkatyal@milbank.com

*Counsel for Defendant-Appellant KalshiEX LLC*

## CIRCUIT RULE 27-3 CERTIFICATE

I certify the following:

The relief requested in the emergency motion that accompanies this certificate is an administrative stay of the district court's March 2, 2026 order remanding Plaintiff-Appellee's enforcement action against Defendant-Appellant KalshiEX LLC ("Kalshi") to Nevada state court. **This relief is needed as soon as possible.**

On March 4, 2025, Plaintiff sent a cease-and-desist letter threatening Kalshi with enforcement unless Kalshi "immediately" ceased offering certain event contracts for trading in Nevada. Ex. A at 2. Kalshi sought a preliminary injunction in federal court on the ground that the Commodity Exchange Act ("CEA") preempts the application of state gaming laws to designated contract markets ("DCMs") like Kalshi. After initially granting Kalshi a preliminary injunction, the district court reversed itself and dissolved the injunction, thus exposing Kalshi to the threat of enforcement under preempted state law.

Kalshi appealed the dissolution order on November 25, 2025, and moved for a stay pending appeal from this Court. Before filing the stay motion, Kalshi conferred with Plaintiff, which agreed in writing not to enforce against Kalshi while this Court considered the stay motion. The stay motion

has been referred to the merits panel, which has yet to rule. But despite Plaintiff's non-enforcement agreement, on February 17, 2026, after providing notice to this Court, Plaintiff filed an enforcement action against Kalshi in Nevada state court, seeking an *ex parte* temporary restraining order ("TRO") that would ban Kalshi from offering event contracts in Nevada.

Kalshi removed Plaintiff's action to federal court, asserting multiple grounds for removal—including that the CFTC is a necessary party, triggering federal officer removal under 28 U.S.C. § 1442. Plaintiff filed a motion to remand, which the district court granted on March 2, 2026. Kalshi exercised its right to an immediate appeal under 28 U.S.C. § 1447(d), *see BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 245 (2021), and asked the district court to stay the order pending appeal. The district court denied a stay on March 12, 2026. Kalshi now respectfully moves this Court for a stay.

Kalshi faces imminent harm absent an immediate stay. The state court proceedings would undermine Kalshi's appellate rights in this appeal and its related appeal in *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). If the state court reassumes jurisdiction, it could proceed to a final judgment on the merits before this Court can resolve the question whether this appeal belongs in federal court instead—thus effectively nullifying Kalshi's right to appeal the remand. And if the state court were to proceed to final judgment before this

Court in *Assad* decides whether that state-court proceeding is preempted, it would nullify the *Assad* appeal, subject Kalshi to the risk of conflicting judgments, and create jurisdictional chaos. Functionally stripping Kalshi of its appellate rights would subject it to clear irreparable harm that warrants an administrative stay.

Kalshi has filed this motion at the earliest possible opportunity. The district court denied Kalshi's motion for a stay at 11:57 AM PDT on March 12, 2026. Later that day, Plaintiff sought a renewed *ex parte* TRO in Nevada state court. Because Kalshi faces the prospect of an imminent TRO absent a stay, Kalshi files this motion now, and will immediately inform the Court if any of the relief sought herein becomes unnecessary.

On March 13, I advised Plaintiff of this motion via email at approximately 7:47 AM PDT. Plaintiff has informed Kalshi that it opposes the relief requested in this motion. I also advised the Court's emergency motions unit of this filing via email at 9:20 AM PDT. Below I have reproduced the names, telephone numbers, e-mail addresses, and office addresses of the attorneys for all parties:

*Counsel for Defendant-Appellant KalshiEX LLC:*

Dennis L. Kennedy
(702) 562-8820
dkennedy@baileykennedy.com

Paul C. Williams
(702) 562-8820
pwilliams@baileykennedy.com

**BAILEY❖KENNEDY**
8984 Spanish Ridge Ave.
Las Vegas, NV 89148

Neal Kumar Katyal
(202) 835-7505
nkatyal@milbank.com

Joshua B. Sterling
(202) 835-7535
jsterling@milbank.com

William E. Havemann
(202) 835-7518
whavemann@milbank.com

Samantha K. Ilagan
(202) 835-7594
silagan@milbank.com

**MILBANK LLP**
1101 New York Ave., N.W.
Washington, DC 20005

Grant R. Mainland
(212) 530-5251
gmainland@milbank.com

Matthew J. Laroche
(212) 530-5514
mlaroche@milbank.com

Andrew L. Porter
(212) 530-5361
aporter@milbank.com

Davis Campbell
(212) 530-5222
dcampbell@milbank.com

**MILBANK LLP**
55 Hudson Yards
New York, NY 10001

*Counsel for Plaintiff-Appellee the State of Nevada ex rel. Nevada Gaming Control Board:*

Jessica E. Whelan
(702) 486-4346
jwhelan@ag.nv.gov

Sabrena K. Clinton
(702) 486-3420
sclinton@ag.nv.gov

**STATE OF NEVADA**
**OFFICE OF THE ATTORNEY GENERAL**
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119

John S. Michela
(775) 850-1150
jmichela@ag.nv.gov

**STATE OF NEVADA**
**OFFICE OF THE ATTORNEY GENERAL**
**GAMING DIVISION**
5420 Kietzke Lane, Ste. 202
Reno, NV 89511

Date: March 13, 2026                    */s/ William E. Havemann*
                                        William E. Havemann

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

BACKGROUND ..................................................................... 4

I. LEGAL BACKGROUND .......................................... 4

II. FACTUAL AND PROCEDURAL BACKGROUND ............................. 6

LEGAL STANDARD ............................................................... 10

ARGUMENT ....................................................................... 10

I. KALSHI IS LIKELY TO PREVAIL ON APPEAL ............................. 11

    A. The District Court Has Federal Question Jurisdiction Under *Grable* ............................................ 12

    B. Because The CFTC Is A Required Party Under Nevada Law, Removal Was Proper Under Section 1442(a)(1) ................ 16

II. KALSHI WILL SUFFER IRREPARABLE HARM ABSENT A STAY .................. 18

III. THE EQUITIES STRONGLY FAVOR A STAY ............................ 20

IV. THE COURT SHOULD IMMEDIATELY GRANT AN ADMINISTRATIVE STAY .... 23

CONCLUSION ..................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

INDEX OF EXHIBITS

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Assurance Wireless USA, L.P. v. Reynolds,*
100 F.4th 1024 (9th Cir. 2024) ............................................................ 10

*BP P.L.C. v. Mayor & City Council of Baltimore,*
593 U.S. 230 (2021) .............................................. 2, 3, 19, 21

*Brennan v. Sw. Airlines Co.,*
134 F.3d 1405 (9th Cir. 1998) .................................................. 16

*Bright v. Bechtel Petroleum, Inc.,*
780 F.2d 766 (9th Cir. 1986) .......................................... 16, 17

*Cothran v. Ellis,*
16 N.E. 646 (Ill. 1888) ................................................ 4

*County of San Mateo v. Chevron Corp.,*
32 F.4th 733 (9th Cir. 2022) ...................................... 12

*Doe #1 v. Trump,*
944 F.3d 1222 (9th Cir. 2019) ................................... 23

*Edwards v. Emperor's Garden Rest.,*
130 P.3d 1280 (Nev. 2006) ..................................... 14

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,*
458 U.S. 141 (1982) ............................................... 14

*Georgia Gambling Recovery LLC v. Kalshi, Inc.,*
No. 4:25-cv-310, 2026 WL 279375
(M.D. Ga. Feb. 3, 2026) ........................................ 15

*Golden Gate Rest. Ass'n v. City & County of San Francisco,*
512 F.3d 1112 (9th Cir. 2008) ................................. 11

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
545 U.S. 308 (2005) ....................................... 12, 16

## TABLE OF AUTHORITIES—Continued

Page(s)

*Guenther v. Comm'r of Internal Rev.*,
889 F.2d 882 (9th Cir. 1989)..................................................... 22

*Gunn v. Minton*,
568 U.S. 251 (2013) .......................................................... 12, 15

*Hornish v. King County*,
899 F.3d 680 (9th Cir. 2018)............................................. 12, 13

*KalshiEX LLC v. CFTC*,
No. 23-cv-3257, 2024 WL 4164694
(D.D.C. Sep. 12, 2024) ...................................................... 6

*KalshiEX LLC v. CFTC*,
No. 24-5205, 2025 WL 1349979
(D.C. Cir. May 7, 2025)...................................................... 6

*KalshiEX LLC v. Hendrick*,
No. 2:25-cv-575, 2025 WL 1073495
(D. Nev. Apr. 9, 2025) ...................................................... 7

*KalshiEX LLC v. Hendrick*,
No. 2:25-cv-575, 2025 WL 3286282
(D. Nev. Nov. 24, 2025)................................................. 7, 15

*KalshiEX LLC v. Orgel*,
No. 3:26-cv-34, 2026 WL 474869
(M.D. Tenn. Feb. 19, 2026) ......................................... 15, 16

*Leist v. Simplot*,
638 F.2d 283 (2d Cir. 1980) .................................................. 4

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ............................................... 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
456 U.S. 353 (1982) ........................................................... 5

## TABLE OF AUTHORITIES—Continued

Page(s)

*Nken v. Holder*,
   556 U.S. 418 (2009)................................................................ 10

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
   No. 1:16-cv-534, 2016 WL 3346349
   (E.D. Va. June 16, 2016) ................................................... 19, 20

*Providence J. Co. v. FBI*,
   595 F.2d 889 (1st Cir. 1979).................................................19

*Raskas v. J&J*,
   No. 4:12-cv-2174, 2013 WL 1818133
   (E.D. Mo. Apr. 29, 2013) ...................................................... 20

*United States v. Real Prop. & Improv.*,
   No. 13-cv-2027, 2015 WL 525711
   (N.D. Cal. Feb. 6, 2015) ....................................................... 20

*United States v. Texas*,
   144 S. Ct. 797 (2024) ........................................................... 23

*Wells v. Bank of Nev.*,
   522 P.2d 1014 (Nev. 1974) ................................................... 18

### STATUTES:

7 U.S.C. § 2(a)(1)(A) ...................................................................... 4

7 U.S.C. § 5 ........................................................................... 17, 18

7 U.S.C. § 7a-2(c)(1).................................................................. 5, 6

7 U.S.C. § 7a-2(c)(5)(C)(i) ............................................................. 5

28 U.S.C. § 1442 ....................................................................2, 12

28 U.S.C. § 1442(a)(1) .................................................................16

## TABLE OF AUTHORITIES—Continued

Page(s)

28 U.S.C. § 1447(c) ................................................................. 18

28 U.S.C. § 1447(d) .................................................. 2, 3, 12, 19

NRS 30.030 ...............................................................................17

NRS 30.130 ............................................................... 9, 17, 18

NRS 463.160 .....................................................................12, 13, 15

NRS 465.086(1)........................................................ 12, 13, 14, 15

**RULES & REGULATIONS:**

17 C.F.R. §§

38.4(b) ........................................................................... 5

38.150 ............................................................................ 5

38.155 ............................................................................ 5

38.156 ............................................................................ 5

38.450 ............................................................................ 5

38.950 ............................................................................ 5

38.1101(a) ...................................................................... 5

40.2(a)(1) ................................................................... 5, 6

40.2(b) ......................................................................... 6, 7

40.2(c) ............................................................................ 5

40.11(c) .......................................................................... 5

40.11(c)(2)...................................................................... 5

# TABLE OF AUTHORITIES—Continued

Page(s)

CFTC, CFTC Release No. 8780-23, *CFTC Disapproves KalshiEX LLC's Congressional Control Contracts* (2023)................................................. 6

*Event Contracts*,
89 Fed. Reg. 48,968, 48,972 (June 10, 2024) ........................................ 6

Fed. R. App. P. 8(a)(1)(A)............................................................. 10

**LEGISLATIVE MATERIALS:**

*Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. (1974) .................................................. 16, 21

H.R. Rep. No. 93-1383 (1974) ........................................................ 4

**OTHER AUTHORITIES:**

Adam Greenblatt, *Fourth Quarter 2025 Update* 12, BetMGM, LLC (Feb. 4, 2026), https://perma.cc/RLK5-RKPD................................................. 22

Thomas Reeg, *Caesars (CZR) Q4 2025 Earnings Call Transcript*, Motley Fool (Feb. 17, 2026), https://perma.cc/996T-AVBA ............................. 22

## INTRODUCTION

The ultimate issue in this case concerns whether, under the Commodity Exchange Act ("CEA"), Congress's grant of "exclusive jurisdiction" to the Commodity Futures Trading Commission ("CFTC") preempts Nevada's attempt to regulate trading on CFTC-designated contract markets ("DCMs"). The District of Nevada originally granted Kalshi a preliminary injunction on that question in April 2025, but in November 2025, it dissolved that preliminary injunction while repeatedly emphasizing that the preemption argument presents serious and difficult questions on the merits. Kalshi promptly appealed to this Court and sought a stay of the dissolution order pending appeal. *See KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). Kalshi's stay motion remains pending, and this Court is holding argument in *Assad* next month.

Plaintiff, the Nevada Gaming Control Board, initially agreed to stay its enforcement efforts against Kalshi pending a decision by this Court on Kalshi's motion for a stay pending appeal. But it abruptly reversed course last month, initiating a state-court enforcement action against Kalshi on February 17. Although this Court has not yet decided Kalshi's stay motion, and despite Plaintiff's prior written agreement to withhold enforcement, Plaintiff rushed to state court to obtain an *ex parte* temporary restraining order

("TRO") against Kalshi. In that TRO application, Plaintiff sought to prohibit Kalshi from offering *all* its event contracts, even though these contracts are lawful under federal law. In the words of Plaintiff's counsel, the reason for Plaintiff's sudden about-face "was, frankly, the Super Bowl." Ex. B at 7.

Kalshi removed Plaintiff's action to federal court, asserting that removal was proper on numerous grounds, including that the CFTC was a necessary party, triggering federal officer removal under 28 U.S.C. § 1442. *See* D. Ct. Dkt. 1. Plaintiff filed a motion to remand, which the district court granted on March 2, 2026. Kalshi exercised its right to immediately appeal that order under 28 U.S.C. § 1447(d); *see BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 245 (2021), and asked the district court to stay the order pending appeal. The district court denied a stay on March 12, 2026, and Kalshi now respectfully moves this Court for a stay pending appeal, as well as an administrative stay while this Court considers whether to grant a stay pending appeal.

A stay is appropriate because Kalshi is likely to succeed on the merits. Removal was proper for multiple reasons. For one, Plaintiff's action raises a "federal question" because Plaintiff's entitlement to relief under state law turns on a question of federal law. For another, the CFTC is a necessary party, and Plaintiff's failure to join it in this action through artful pleading does

nothing to undermine federal-officer removal jurisdiction. Moreover, because Congress provided parties the right to an immediate appeal of any order remanding a case that cites federal officer removal as a basis for jurisdiction, 28 U.S.C. § 1447(d), this Court plainly has the authority to consider and quickly reverse the district court's erroneous decision. *See BP P.L.C.*, 593 U.S. at 245.

If the remand order is permitted to stand, Kalshi will face irreparable harm pending appeal. The parties will be in an untenable position of litigating related issues in four different forums: the Nevada First Judicial District, the District of Nevada, and two panels of this Court. Allowing that to happen would create an untenable risk of subjecting Kalshi to conflicting federal and state court decisions. For example, the state court could enter judgment against Kalshi, finding that the CEA does not preempt state gambling laws, while this Court in *Assad* arrives at exactly the opposite conclusion. The state court could even take the view that it is not bound by this Court's decision in *Assad*, which would create jurisdictional chaos. Plaintiff's desire to prevent Kalshi's users from trading on "the Super Bowl" and "March Madness," Ex. B at 7-8, comes nowhere close to justifying the creation of such a jurisdictional quagmire.

Kalshi respectfully requests a stay of the remand order pending appeal, as well as an immediate administrative stay while this Court considers this motion.

## BACKGROUND

### I. LEGAL BACKGROUND

Kalshi's event contracts are derivatives: financial instruments whose value depends on one or more underlying commodities. Decades ago, many states regulated derivatives, including by prohibiting them as "gambling." *E.g.*, *Cothran v. Ellis*, 16 N.E. 646, 648 (Ill. 1888). But in 1974, Congress passed sweeping amendments to the CEA that brought derivatives under exclusive federal regulation. Congress created the CFTC and granted it "exclusive jurisdiction" over trading on federally designated "contract market[s]," thus "supersed[ing]" state laws. 7 U.S.C. § 2(a)(1)(A). Congress's avowed purpose was to "preempt the field insofar as futures regulation is concerned," and it did "not contemplate that there will be a need for any supplementary regulation by the States." H.R. Rep. No. 93-1383, at 35-36 (1974). Courts immediately recognized the amendments' preemptive effect. *See, e.g.*, *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.) ("the CEA preempts the application of state law").

The CEA today sets out a "comprehensive regulatory structure" for entities seeking to offer derivatives. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982) (citation omitted). Derivatives exchanges must become DCMs, and CFTC regulations outline the application process and requirements to become a DCM. 17 C.F.R. §§ 38.150, 38.155, 38.156. CFTC regulations also detail CFTC oversight and reporting requirements for DCMs, *Id.* §§ 38.950, 38.450, 38.1101(a).

The CEA prescribes a detailed system for the approval and listing of contracts on DCMs. DCMs may list new contracts by self-certifying compliance with applicable requirements. 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. §§ 38.4(b), 40.2(a)(1). The CFTC may stay listing of a new contract in certain circumstances. 17 C.F.R. § 40.2(c).

Certain "[e]vent contracts" are subject to a "Special [R]ule": If they involve "gaming" or certain other activities, the CFTC "may"—but need not—prohibit them as "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(C)(i). If the CFTC concludes that an event contract may fall within an enumerated category in the Special Rule, it may subject the contract to a 90-day public-interest review. 17 C.F.R. § 40.11(c). Following review, the CFTC "shall issue an order approving or disapproving" the contract. *Id.* § 40.11(c)(2).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

1.  In 2020, the CFTC certified Kalshi as a DCM.  *See KalshiEX LLC v. CFTC*, No. 23-cv-3257, 2024 WL 4164694, at *4 (D.D.C. Sep. 12, 2024), *appeal dismissed*, No. 24-5205, 2025 WL 1349979 (D.C. Cir. May 7, 2025). Kalshi offers event contracts related to climate, technology, health, popular culture, economics, politics, and sports.  The latter two types of event contracts have attracted regulatory attention.  In 2023, the CFTC conducted a public-interest review of Kalshi's political-election contracts pursuant to the Special Rule and issued an order prohibiting Kalshi from offering the contracts.  *See Event Contracts*, 89 Fed. Reg. 48,968, 48,972 (June 10, 2024) (citing CFTC, CFTC Release No. 8780-23, *CFTC Disapproves KalshiEX LLC's Congressional Control Contracts* (2023)).  A federal court later invalidated that order under the Administrative Procedure Act, holding that the CEA required the CFTC to permit these contracts.  *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *13.

In January 2025, Kalshi began offering contracts on sports events after certifying in submissions to the CFTC that the contracts complied with the CEA.  *See* 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(a)(1).  Although the CFTC is permitted to challenge these offerings under the "Special Rule" if it concludes they involve "gaming," the CFTC has not taken issue with any of Kalshi's

6

sports-event contracts, nor has it requested "additional evidence" concerning those contracts pursuant to 17 C.F.R. § 40.2(b).

2. In March 2025, Plaintiff sent Kalshi a cease-and-desist letter asserting that Kalshi's election and sports contracts are prohibited by Nevada gambling laws and demanding that Kalshi cease offering them in Nevada. Ex. A at 2. The Board "expressly reserve[d] all rights to pursue criminal and civil actions based on Kalshi's past and future conduct within the state." *Id.*

Kalshi filed suit in the District of Nevada in response to the cease-and-desist letter, seeking an injunction that would prohibit the state from enforcing Nevada gaming laws against Kalshi. *KalshiEX LLC v. Hendrick (Hendrick I)*, No. 2:25-cv-575, 2025 WL 1073495, at *1 (D. Nev. Apr. 9, 2025). The court granted Kalshi a preliminary injunction on the ground that the CEA's "plain and unambiguous language" "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." *Id.* at *6. The state elected not to appeal.

Six months later, however, the district court dissolved the preliminary injunction. *KalshiEX LLC v. Hendrick (Hendrick II)*, No. 2:25-cv-575, 2025 WL 3286282, at *3 (D. Nev. Nov. 24, 2025). Kalshi immediately appealed that decision, and the appeal is pending before this Court, which has

scheduled oral argument for April 16, 2026. *Assad*, No. 25-7516 (9th Cir. Feb. 8, 2026), Dkt. 58. Kalshi moved in this Court for a stay of the dissolution order pending appeal, and Plaintiff agreed not to initiate an enforcement action against Kalshi while that motion remained pending. KalshiEX LLC's Mot. for a Stay Pending Appeal at 9, *Assad*, No. 25-7516 (9th Cir. Dec. 17, 2025), Dkt. 17.1. This Court has yet to resolve the stay motion.

On February 5, 2026, the CFTC filed a motion to file an amicus brief in support of Kalshi's position in an appeal that has been consolidated with *Assad* for oral argument. The CFTC ultimately filed that brief on February 17, 2026. CFTC Amicus Br., *N. Am. Derivatives Exch. Inc. v. Nevada (Crypto)*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. 38.2 ("CFTC Br."), https://perma.cc/B2PF-3F2T. The CFTC's brief unequivocally supports Kalshi's position that the CEA preempts state efforts to regulate prediction markets—*i.e.*, DCMs that offer event contracts. The CFTC explained that "States cannot invade the CFTC's exclusive jurisdiction over [DCMs] by re-characterizing swaps trading on DCMs as illegal gambling." *Id.* at 2. It further explained that accepting Plaintiff's efforts to regulate DCMs would "redraw the statutory boundary Congress established" and "risk destabilizing the settled expectations upon which these markets depend," potentially

"introduc[ing] the 'chaos' Congress sought to prevent by providing the CFTC with exclusive jurisdiction over futures trading in 1974." *Id.* at 28-29.

Notwithstanding the pending appeal in this Court and Plaintiff's agreement to withhold enforcement pending this Court's decision on Kalshi's stay motion, Plaintiff filed this action in the First Judicial District Court for Carson City on February 17, 2026, the same day the CFTC filed its amicus brief. D. Ct. Dkt. 8-1 ("Compl."). Plaintiff also applied for an *ex parte* TRO and moved for a preliminary injunction that would "prohibit[ ]" Kalshi from "offer[ing] event-based contracts relating to sporting *and other events*" in Nevada. D. Ct. Dkt. 8-2 at 13 (emphasis added). And Plaintiff conspicuously failed to join the CFTC, despite its status as a necessary party under NRS 30.130.

Kalshi removed to federal court later that day, D. Ct. Dkt. 1, and Plaintiff moved to remand on February 18, 2026, D. Ct. Dkt. 10. The district court granted Plaintiff's motion on March 2, 2026. Ex. C.

Kalshi appealed the district court's remand order on March 3, 2026. D. Ct. Dkt. 47. The same day, Kalshi moved for a stay pending appeal, which the district court denied on March 12, 2026. D. Ct. Dkt. 63. A few hours later, Plaintiff notified Kalshi that it had sought an *ex parte* TRO against Kalshi in state court that would bar Kalshi from offering a wide array of its event

contracts in Nevada. Kalshi now respectfully moves in this Court for a stay pending appeal and an emergency administrative stay pending resolution of the stay application.

## LEGAL STANDARD

This Court may "stay" an "order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). In deciding whether to grant a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). The "first two factors" "are the most critical," and the last two "merge when the Government is the opposing party." *Id.* at 434-435. This Court applies a "sliding scale" approach permitting a stay where the applicant raises "a 'serious question' on the merits when the balance of hardships tips sharply in their favor." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (citation omitted).

## ARGUMENT

The necessity of a stay in this case is plain: This Court will shortly consider whether Nevada's effort to enforce its gaming laws against Kalshi

intrudes upon the exclusive jurisdiction of a federal agency and thus violates the Supremacy Clause. Rather than wait for this Court's ruling, Nevada rushed to state court and sought a TRO, creating an untenable risk of conflicting state and federal decisions on the same basic question—the state's authority to regulate Kalshi. Yet when Kalshi sought to avoid this result by exercising its clear right to remove the state case to federal court, the federal district court erroneously remanded. Now, the state court is poised to create jurisdictional chaos by issuing a ruling that tramples on the CFTC's exclusive jurisdiction and (ironically) threatens to preempt this Court's impending ruling on the important *federal* questions in *Assad*. Because a stay from this Court will avoid these obvious harms and because all of the requirements for a stay are met, this Court should expeditiously grant Kalshi relief.

## I. KALSHI IS LIKELY TO PREVAIL ON APPEAL.

To establish that it is "likely to succeed on the merits," the moving party need only "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Golden Gate Rest. Ass'n v. City & County of San Francisco,* 512 F.3d 1112, 1115-16 (9th Cir. 2008) (citations omitted); *see Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (movant "need not demonstrate that it is more likely than not that [it] will win on the merits").

The remand order is appealable because Kalshi removed pursuant to 28 U.S.C. § 1442.  *See* 28 U.S.C. § 1447(d); D. Ct. Dkt. 1 at 8 (invoking Section 1442).  Because this Court has jurisdiction, this Court may "consider all bases for removal" Kalshi has "raised."  *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022).  Kalshi's grounds for removal raise serious legal questions that warrant a stay.

## A.  The District Court Has Federal Question Jurisdiction Under *Grable*.

The Supreme Court has long held "that in certain cases[,] federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  State-law claims give rise to federal question jurisdiction where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Those elements are met here.

*Federal issues are necessarily raised.*  A federal law issue is "necessarily raised" when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law."  *Hornish v. King County*, 899 F.3d 680, 688 (9th Cir. 2018) (citations omitted).  Here,

whether Plaintiff is entitled to declaratory and injunctive relief under the statutes it invokes turns on federal law. *See* NRS 463.160, 465.086(1).

Begin with NRS 463.160: It renders operating a sports pool unlawful without procuring and maintaining "all *federal*, state, county and municipal gaming licenses or registrations as *required* by statute, regulation or ordinance or by the governing board of any unincorporated town" (emphasis added). Determining what "*federal*, state, county and municipal ... licenses" are "required" naturally requires resort to "*federal*, state, county *and* municipal" law. *Id.* (emphasis added). In this case, under the CEA, Kalshi's federal license to operate as a DCM means that a state gaming license is *not* required to offer event contracts. Accordingly, Plaintiff's entitlement to relief under NRS 463.160 turns on the "construction of federal law" rather than on state law alone. *Hornish*, 899 F.3d at 688 (citation omitted).

The district court misunderstood this argument, holding that "the Board's state-law claims relate strictly to state licenses." Ex. C at 4. But the question is what "licenses"—whether federal or state—are "required." NRS 463.160. The district court was therefore mistaken in holding that "Kalshi's lack of a state license" is enough for Plaintiff to prevail on its claims under the statute. Ex. C at 4 (citation omitted). Plaintiff must prove a state license is "required," which requires resort to federal law, not just state law.

NRS 465.086(1), in turn, provides that "*[e]xcept as otherwise provided by law*, it is unlawful for a person to receive ... any percentage or share of the money or property played, for accepting any bet or wager ... without having first procured, and thereafter maintaining in effect, all federal, state, county and municipal gaming licenses as required by statute."  (emphasis added). To prove entitlement to relief under this statute, Plaintiff must prove that no "law" "provide[s]" "otherwise" than NRS 465.086(1).  The CEA is one such "law" because it preempts state gaming regulation as applied to trading on DCMs, allowing Kalshi to list event contracts for trading unless the CFTC specifically prohibits them.

The district court's contrary conclusion rested on its interpretation of "law" as "the law of Nevada" alone.  Ex. C at 5.  But this conclusion was erroneous for numerous reasons.  Federal law *is* part of the law of Nevada.  *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution." (citation omitted)). Moreover, the very next clause of the statute refers to both "federal" and "state" law.  NRS 465.086(1).  And Nevada courts have interpreted identical language in a federal statute to refer both to federal and state law.  *See Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1286 (Nev. 2006).  If there

14

were any doubt on the question, the Supremacy Clause would require interpreting the term "law" to include both federal and state law.

*Georgia Gambling Recovery LLC v. Kalshi, Inc.*, No. 4:25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), is instructive as to both provisions at issue here. There, a Georgia statute required courts to determine "whether the contract is unlawful under *the law* governing its validity." *Id.* at *3 (emphasis added). That is the same question presented by NRS 463.160 (what licenses are "required") and NRS 465.086(1) (whether any "law" "provide[s]" "otherwise"). And contrary to Plaintiff's and the district court's view, the Georgia district court rejected the argument that proof concerning state licensure was sufficient. *Georgia*, 2026 WL 279375, at *3. Whether Kalshi has the "gaming licenses or registrations as required," NRS 463.160, "cannot be determined by reference to [Nevada] law alone," *Georgia*, 2026 WL 279375, at *3.

*The other* Grable *factors support removal.* The parties actually dispute whether, under the CEA, Kalshi is required to obtain a state license. *Gunn*, 568 U.S. at 258. And the dispute involves "serious [federal] questions on the merits," *Hendrick II*, 2025 WL 3286282, at *3, which, as the CFTC recently explained, could result in "a seismic shift in the longstanding status quo between CFTC and state authority," CFTC Br. 2. Litigation concerning these

15

questions is pending in numerous courts around the country, further demonstrating their substantiality. *KalshiEX LLC v. Orgel*, No. 3:26-cv-34, 2026 WL 474869 at *1 (M.D. Tenn. Feb. 19, 2026) (listing courts addressing these questions). Moreover, Congress's intent to avoid the "total chaos" of 50 states attempting to regulate DCMs like Kalshi weighs in favor of having these substantial federal issues—which go to the heart of the exclusive regulatory scheme Congress created more than 50 years ago—in federal court. *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. 685 (1974) ("*Senate Hearings*") (statement of Sen. Clark). Just as the CFTC "has a direct interest in the availability of a federal forum to vindicate its own administrative action," resolution of these federal issues "sensibly belongs in a federal court." *Grable*, 545 U.S. at 315.

### B. Because The CFTC Is A Required Party Under Nevada Law, Removal Was Proper Under Section 1442(a)(1).

Plaintiff's "artful pleading" provides an independent basis for reversing the remand order. *See Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409, 1412 (9th Cir. 1998). Because the CFTC is a necessary party, removal was authorized under 28 U.S.C. § 1442(a)(1). Plaintiff's strategic omission of the CFTC as a party does not defeat jurisdiction. *Cf. Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) ("A plaintiff will not be allowed to

conceal the true nature of a complaint through 'artful pleading.'" (citation omitted)).

Plaintiff seeks declaratory and injunctive relief under NRS 30.030, Compl. ¶ 76, which requires Plaintiff to name as a party any person that "claim[s] any interest which would be affected by the declaration," NRS 30.130. The CFTC has claimed a "substantial interest" in the "scope of its exclusive jurisdiction," including the "CEA's preemption of state laws attempting to regulate trading on CFTC-registered contract markets" like Kalshi. Mot. to Extend Time to File Amicus Curiae Br. at 1-2, *Crypto* (Feb. 5, 2026), Dkt. 30.1. It has opposed Plaintiff's attempt to "invade" its "exclusive jurisdiction over CFTC-regulated [DCMs] by re-characterizing swaps trading on DCMs as illegal gambling." CFTC Br. 2.

The district court held that a party is only a necessary party under NRS 30.130 if that party has a "legal interest." Ex. C at 9-10. That interpretation cannot be squared with the plain language of the statute, which refers to "*any* interest which would be affected by the declaration." NRS 30.130 (emphasis added). Regardless, the CFTC has the same "strong legal interest" in this action that Plaintiff asserts in the complaint. Compl. ¶ 79. By targeting a DCM, the action "directly impacts the [CFTC's] ability to carry out its"

17

mandate under the CEA no less than it "impacts the Board's ability to carry out its legislative charge to strictly regulate gaming." *Id.*; *see* 7 U.S.C. § 5.

The district court mistakenly relied on *Wells v. Bank of Nev.*, 522 P.2d 1014 (Nev. 1974), to narrow NRS 30.130. Ex. C at 9. But *Wells* addressed whether heirs of a deceased contractual party had third-party standing to challenge the terms of that contract. *Id.* at 1017. There was no necessary-party determination under NRS 30.130—indeed, the heirs brought the claims themselves. *Id.* The heirs contended they had third-party standing to challenge the contract by analogizing to NRS 30.040 and NRS 30.130, among other statutes, but the court rejected that argument. *Id.* at 1017-18. That is a far cry from the situation here, where the CFTC has directly asserted its interest in a parallel proceeding in federal court. Plaintiff cannot plead its way around that interest to stay in state court.

## II. KALSHI WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Once the clerk mails the certified copy of the remand order to the State Court, "the State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). Kalshi is likely to suffer substantial irreparable harm if the state court proceeds.

*First*, the state court proceedings would undermine Kalshi's appellate rights here. If the state court resumes jurisdiction, it can proceed, perhaps

even to a final judgment on the merits, before this Court can resolve the appeal. That would render the remand order "irrevocable" without a chance for this court to "take a fresh look at the decision." *Providence J. Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979). Congress made the judgment that "an order remanding a case to the State court from which it was removed pursuant to section 1442 … *shall be reviewable by appeal*." 28 U.S.C. § 1447(d) (emphasis added). In cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP P.L.C.*, 593 U.S. at 245. Functionally stripping Kalshi of its appellate rights would subject it to irreparable harm, contrary to Congress's intent in providing for appellate review in Section 1447(d). The "Super Bowl" and "March Madness," on which Plaintiff relies to justify its own purported urgency, are no basis for nullifying Kalshi's appellate rights. Ex. B at 7-8.

*Second*, the state court proceedings undermine Kalshi's appellate rights in *Assad*. If the state court proceeds to a final judgment, it could deem Kalshi issue-precluded from continuing to litigate CEA preemption issues before this Court in *Assad*. Worse, it likely would embolden Nevada to take the position that it is not bound by any decision this Court renders. That would create a jurisdictional morass that would worsen if other states were to follow Nevada's lead. Because any "intervening state court judgment or order could

render the appeal meaningless," Kalshi faces "severe and irreparable harm if no stay is issued." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16-cv-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016). By contrast, if the action remains pending in the district court rather than in state court, this Court's ability to resolve the important preemption issues in *Assad* can be preserved.

## III. THE EQUITIES STRONGLY FAVOR A STAY.

Denying a stay here would create judicial chaos that will harm not only Kalshi, but the public too. There is a "cognizable public interest in promoting judicial economy, and avoiding duplicative litigation and inconsistent rulings by granting a stay." *United States v. Real Prop. & Improv.*, No. 13-cv-2027, 2015 WL 525711, at *5 (N.D. Cal. Feb. 6, 2015); *see also Raskas v. J&J*, No. 4:12-cv-2174, 2013 WL 1818133, at *2 (E.D. Mo. Apr. 29, 2013) (similar).

Absent a stay, the parties will proceed simultaneously along at least three tracks: They will brief and argue Kalshi's appeal of the remand order in this Court while litigating Plaintiff's state-law claims in state court—all the while litigating the same issues in the District of Nevada and before this Court in *Assad*. *See KalshiEX LLC v. Hendrick*, No. 2:25-cv-575 (D. Nev.), *appeal docketed*, *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). This is an absurd situation given that this Court has already agreed to hear oral

argument in *Assad* on April 16, 2026. It illustrates exactly the "total chaos" Congress feared from states attempting to enforce their own laws notwithstanding the CEA. *Senate Hearings* at 685. Such wasteful parallel litigation serves no one's interests.

Allowing the state court to proceed could eventually put the district court in the uncomfortable position of having to sift through and evaluate the state court's prior actions. If a stay is denied, but this Court later concludes that Kalshi properly removed this action, the district court will have to painstakingly unwind the decisions and measures the state court will have already taken. That will inexorably waste judicial and party resources, as well as inviting duplicative and inconsistent decisions. Staying the remand decision pending appeal would temporarily halt Plaintiff's enforcement action, but Nevada's own decision to leave the *Hendrick I* preliminary injunction in place for months without appealing demonstrates that such a temporary delay is not harmful. Regardless, in cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP P.L.C.*, 593 U.S. at 245. "[E]ven the most formidable policy arguments cannot overcome a clear statutory directive." *Id.* (quotation marks and citation omitted).

Further, there is good reason to discount Plaintiff's *ipse dixit* that "every day Kalshi operates" it imposes harms on Nevada and its gaming industry. *See, e.g.*, D. Ct. Dkt. 48 at 4. Plaintiff never appealed the initial preliminary injunction issued in *Hendrick I* and waited six months before moving to dissolve it. Moreover, multiple sportsbooks have told their investors that prediction markets like Kalshi are not adversely affecting their businesses.[1] It is no answer that Plaintiff is harmed because it has been delayed in its attempt to seek *ex parte* relief against Kalshi in state court. "[E]x parte proceedings are anathema in our system of justice." *Guenther v. Comm'r of Internal Rev.*, 889 F.2d 882, 884 (9th Cir. 1989) (citation omitted). Further, any purported harm is sharply reduced by Kalshi's willingness to pursue its appeal expeditiously. Kalshi is prepared to seek expedited review in its appeal. That should assuage Plaintiff's concerns, which, in any case, are largely attributable to Plaintiff's own choice not to appeal *Hendrick I*.

---

[1] *See* Adam Greenblatt, *Fourth Quarter 2025 Update* 12, BetMGM, LLC (Feb. 4, 2026), https://perma.cc/RLK5-RKPD ("we're not seeing a material adverse impact that could be specifically attributed to prediction markets"); Thomas Reeg, *Caesars (CZR) Q4 2025 Earnings Call Transcript*, Motley Fool (Feb. 17, 2026), https://perma.cc/996T-AVBA ("We are not seeing any impact" from "prediction markets" "in our regulated markets as we operate today.").

## IV. THE COURT SHOULD IMMEDIATELY GRANT AN ADMINISTRATIVE STAY.

This Court should issue an administrative stay because Kalshi will suffer substantial irreparable harm absent immediate relief. The purpose of an administrative stay is "to minimize harm while an appellate court deliberates." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring); *see Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (administrative stay is "intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered").

The harms discussed above will result immediately if the state court grants an *ex parte* TRO against Kalshi. Within an hour of the district court's denial of Kalshi's request for a stay, Plaintiff informed Kalshi of its intent to seek a TRO against Kalshi in state court. Plaintiff filed the application shortly thereafter. Ex. D. In other recent actions involving event contracts, the state court has issued TROs *ex parte*, without affording the defendants opportunity to be fully heard. Ex. E at 6 (granting TRO but noting that Polymarket had only a "limited" "opportunity to respond"); Ex. F at 6 (granting TRO but noting Coinbase had only "been given *some* opportunity to respond" (emphasis added)). At any moment, the state court could begin issuing orders against Kalshi that could not readily be unwound in the event this Court determines federal jurisdiction is proper. And the parties and the judicial

system would be required to waste resources on duplicative litigation in multiple forums while Kalshi's stay motion is pending. An administrative stay is warranted to preserve the status quo while this Court considers the serious questions presented by this appeal.

## CONCLUSION

The Court should stay the remand order pending appeal. It should also grant an immediate administrative stay pending its resolution of the stay motion.

Date: March 13, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*

GRANT R. MAINLAND
MATTHEW J. LAROCHE
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

DENNIS L. KENNEDY
PAUL C. WILLIAMS
BAILEY ❖ KENNEDY
8984 Spanish Ridge Ave.
Las Vegas, NV 89148

NEAL KUMAR KATYAL
JOSHUA B. STERLING
COLLEEN E. ROH SINZDAK
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7505
nkatyal@milbank.com

*Counsel for Defendant-Appellant KalshiEX LLC*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 5,163 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f).

This motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Georgia font 14-point type face.

Date: March 13, 2026          */s/ Neal Kumar Katyal*
                              Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that, on March 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

Date: March 13, 2026     */s/ Neal Kumar Katyal*

            Neal Kumar Katyal

## INDEX OF EXHIBITS

| Exhibit | Document Description |
|---------|---------------------|
| A | D. Ct. Dkt. 24-3 – NGCB Cease & Desist Letter to KalshiEX LLC (Mar. 4, 2025) |
| B | D. Ct. Dkt. 51 – Excerpt of Transcript of Feb. 24, 2026 Hearing on Plaintiff's Motion to Remand |
| C | D. Ct. Dkt. 45 – Remand Order (Mar. 2, 2026) |
| D | Pl.'s Renewed *Ex Parte* App. for Immediate TRO and Mot. for Prelim. Inj., *State of Nevada v. KalshiEX LLC*, No. 26 OC 00050 1B (1st Jud. D. Ct. Nev. Mar. 12, 2026) |
| E | Order Granting TRO, *State of Nevada v. Blockratize, Inc.*, No. 26 OC 0012 1B (1st Jud. D. Ct. Nev. Jan. 29, 2026) |
| F | Order Granting TRO, *State of Nevada v. Coinbase Fin. Mkts., Inc.*, No. 26 OC 00030 1B (1st Jud. D. Ct. Nev. Feb. 5, 2026) |