**No. 26-1304**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,

*Plaintiff-Appellee*,

v.

KALSHIEX, LLC,

*Defendant-Appellant*,

On Appeal from the United States District Court for the
District of Nevada, No. 2:26-cv-00406 (Hon. Miranda M. Du)

**PLAINTIFF-APPELLEE'S MOTION TO DISMISS THE APPEAL
FOR LACK OF JURISDICTION**

Aaron D. Ford
 Attorney General of Nevada
Jessica E. Whelan
 Chief Deputy Solicitor
 General—Litigation
Sabrena K. Clinton
 Senior Deputy Attorney General
State of Nevada,
 Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

ARGUMENT ..................................................................... 9

CONCLUSION ................................................................. 14

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Agyin v. Razmzan,*
    986 F.3d 168 (2d Cir. 2021) ...................................................... 10

*Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co.,*
    621 F.3d 931 (9th Cir. 2010) ..................................................... 10

*Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.,*
    644 F.2d 1310 (9th Cir. 1981) .................................................. 12

*Fidelitad, Inc. v. Insitu, Inc.,*
    904 F.3d 1095 (9th Cir. 2018) .................................................. 11

*Friedenberg v. Lane Cnty.,*
    68 F.4th 1113 (9th Cir. 2023) ........................................ 10, 11, 13

*KalshiEX, LLC v. Hendrick,*
    2025 WL 3286282 (D. Nev. Nov. 24, 2025) .............................. 4, 5, 6

*KalshiEX, LLC v. Hendrick,*
    2025 WL 3642346 (D. Nev. Dec. 16, 2025) .................................. 6

*Loc. Union 598, Plumbers & Pipefitters Indus. Journeymen*
    *& Apprentices Training Fund v. J.A. Jones Const. Co.,*
    846 F.2d 1213 (9th Cir. 1988) .................................................. 13

*Morgan v. Huntington Ingalls, Inc.,*
    879 F.3d 602 (5th Cir. 2018) .................................................... 12

*Veneruso v. Mount Vernon Neighborhood Health Ctr.,*
    586 F. App'x 604 (2d Cir. 2014) ............................................... 11

**Statutes and Regulations**

28 U.S.C. § 1331 ........................................................... 8, 10, 11

28 U.S.C. § 1441 .............................................................. 8, 10

28 U.S.C. § 1441(a) .............................................................. 10

28 U.S.C. § 1442 ............................................................. *passim*

28 U.S.C. § 1442(a) ............................................................. 12

# TABLE OF AUTHORITIES
## (continued)

**Statutes and Regulations (continued)**　　　　　　　　　**Page(s)**

28 U.S.C. § 1442(a)(1) ............................................................... 11

28 U.S.C. § 1447(d) ......................................................... 1, 9, 10

NRS § 463.0129(1)(a) ................................................................... 2

NRS § 463.0129(1)(b) ................................................................... 2

NRS § 463.0129(1)(c) ................................................................... 2

NRS § 463.0152 ............................................................................. 3

NRS § 463.0153 ............................................................................. 3

NRS § 463.0193 ............................................................................. 3

NRS § 463.01962 ........................................................................... 3

NRS § 463.140(1) ........................................................................... 3

NRS § 463.160(1) ........................................................................... 3

NRS § 463.343 ........................................................................... 3, 4

NRS § 463.346 ............................................................................... 4

NRS § 463.350 ............................................................................... 3

NRS § 463.370 ............................................................................... 3

Nev. Gam'g Comm. Reg. 22.1205(2) ........................................... 3

## Other Authorities

@Kalshi, X (Jan. 13, 2026) ........................................................... 6

@vegasstarfish, *Kalshi Taking Over Las Vegas*, YouTube
(Feb. 5, 2026) ............................................................................... 6

# TABLE OF AUTHORITIES
## (continued)

**Other Authorities (continued)**

Anna Betts, *Prediction Market Kalshi Reached $1bn in Trading Volume During Super Bowl*, Guardian (Feb. 10, 2026)......................7

Ira Boudway & Denitsa Tsekova, *Kalshi Downloads Zoom Past Gambling Apps Ahead of Super Bowl*, Bloomberg Law (Feb. 5, 2026) ...................................................................... 6, 7

Dustin Gouker, *Kalshi Now Lets You Bet on Dozens of International Soccer and Basketball Leagues*, Event Horizon (Jan. 26, 2026)........................................................................ 6

Dustin Gouker, *The Handle: Inside Kalshi's First $10 Billion Month*, The Closing Line (Feb. 10, 2026)........................................... 7

Sam Learner, *Prediction Markets Barely Make Money; Sportsbooks Make Money*, Fin. Times (Dec. 19, 2025) ........................ 4

Sam McQuillan, *Super Bowl Betting Results Mask Game's Real Financial Story*, Legal Sports Report (Feb. 10, 2026) ........................ 7

Nev. Resort Ass'n, *2025 Nevada Gaming Fact Book* (2025).................... 2

Marc *Novicoff, The Company Making a Mockery of State Gambling Bans*, Atlantic (Oct. 26, 2025).................................................. 4

Nicola M. White, *Sports App Sleeper to Partner With Kalshi on Prediction Markets*, Bloomberg Law (Feb. 6, 2026) ........................... 6

# INTRODUCTION

This appeal should be dismissed because the Court lacks appellate jurisdiction.

This is a state enforcement action brought by the Nevada Gaming Control Board (Board). The defendant is KalshiEX, LLC (Kalshi), a company that offers sports betting in Nevada but refuses to become licensed or comply with state gaming law. The Board filed this case in state court to obtain a court order requiring Kalshi to comply with state law. Kalshi removed the case to federal court. The district court found that Kalshi had no valid basis for removal and remanded the case to state court. Kalshi appealed.

This Court lacks jurisdiction over Kalshi's appeal. Remand orders are not reviewable on appeal, subject to only two narrow exceptions specified in the statute. *See* 28 U.S.C. § 1447(d). As the district court found, Kalshi did not invoke those exceptions in its notice of removal.

Kalshi now argues that it did invoke an exception—the one for cases removed under the federal officer removal statute, 28 U.S.C. § 1442. But for that exception to apply, the removing defendant must cite Section 1442 as a basis for removal and provide facts explaining why it applies. Kalshi did not do that. Its notice of removal expressly stated its asserted bases for removal; Section 1442 was not one of them. Kalshi mentioned Section 1442 only in passing, as part of a hypothetical about what might have happened if the Board had named the Commodity Futures Trading

1

Commission (CFTC) as a defendant. That passing reference to Section 1442 is insufficient. Besides, even if Kalshi had invoked Section 1442 as a basis for removal, that argument would fail, because Kalshi does not claim to be a federal officer or to be acting under the authority of a federal officer—it is a private company that operates an illegal gambling business.

Because the district court's remand order is not appealable, the Court should dismiss this appeal for lack of jurisdiction.

## BACKGROUND

1. Nevada's gaming industry is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS § 463.0129(1)(a). The gaming industry contributes over $2 billion in taxes annually—more than one-third of Nevada's general fund. Nev. Resort Ass'n, *2025 Nevada Gaming Fact Book* 2 (2025), perma.cc/NRH9-5NGV.

The Nevada Legislature has found that the continued growth and success of gaming "is dependent upon public confidence and trust that licensed gaming" is "conducted honestly and competitively." NRS 463.0129(1)(b). In the Legislature's view, the "[p]ublic confidence and trust can only be maintained by *strict* regulation of all persons, locations, practices, associates, and activities related" to the operation of gaming in Nevada. *Id.* § 463.0129(1)(c) (emphasis added). The Board is statutorily

2

charged with administering and enforcing Nevada gaming law. *Id.* § 463.140(1).

Nevada law comprehensively regulates entities that conduct gaming activities in the State. "Gaming" in Nevada is synonymous with "gambling" and includes any regulated game. NRS § 463.0153; *see id.* § 463.0152. Gaming includes operating a "sports pool," which is "the business of accepting wagers on sporting events or other events by any system or method of wagering," *id.* § 463.0193; a "wager" is "a sum of money or representative of value that is risked on an occurrence for which the outcome is uncertain," *id.* § 463.01962.

Every entity conducting gaming in Nevada is subject to a rigorous licensing process. NRS § 463.160(1). Licensed entities must pay taxes on gross gaming revenue derived from gaming activities accessible in the State. *Id.* § 463.370. Among other things, licensed entities may not accept wagers from those under 21 years of age, *id.* § 463.350 and must employ safeguards to ensure that wagers are not being placed on an event by owners, coaches, players, or officials participating in the event, *see* Nev. Gam'g Comm. Reg. 22.1205(2). Being unable to enforce these laws would severely weaken the State's ability to strictly regulate gaming and would jeopardize the growth and integrity of Nevada's gaming industry.

To stop a gaming entity's unlawful operation in Nevada, the Board is authorized to bring a civil action in state court. NRS § 463.343. Such an action must be brought in the district court for Carson City, Nevada,

or the place where the company does business. *Id*. The Board may ask the state court to enter a declaratory judgment or injunction to enforce state gaming law. *Id*. §§ 463.343, 463.346.

2. Kalshi offers sports betting in Nevada without being licensed or complying with any state gaming laws. Specifically, Kalshi operates a market where it allows users in Nevada (and nationwide) to wager on the outcome of sports, elections, and other events. *See* ECF No. 8-1 (Compl.) ¶¶ 2, 20.

Ninety-five percent of Kalshi's revenues are from sports contracts. Sam Learner, *Prediction Markets Barely Make Money; Sportsbooks Make Money*, Fin. Times (Dec. 19, 2025), perma.cc/CB9N-SN6P. Those products "are sports wagers and everyone who sees them knows it." *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *8 (D. Nev. Nov. 24, 2025). For example, as of February 16, 2026, a user could buy a contract for $0.17 that would pay out $1 if the University of Michigan wins the 2026 NCAA Division I men's college basketball championship. Compl. ¶ 21. Kalshi offers the full range of sports bets, including bets on the winners and losers of games, "prop" bets on outcomes within a game (such as the total number of points scored), and "parlays" (chained bets on two or more outcomes). Marc Novicoff, *The Company Making a Mockery of State Gambling Bans*, Atlantic (Oct. 26, 2025), perma.cc/8TAG-NJSJ.

Yet Kalshi does not possess a license to offer sports betting in Nevada or in any State. Compl. ¶ 26. Accordingly, in March 2025, the

4

Board sent Kalshi a cease-and-desist letter directing it to stop accepting wagers from persons inside Nevada without a gaming license. *Id.* ¶ 61.

3. Kalshi then filed a lawsuit in federal district court in Nevada, seeking to enjoin the Board from enforcing Nevada gaming law against it. *See* Compl., *KalshiEX, LLC v. Hendrick*, No. 25-cv-575 (D. Nev. Mar. 28, 2025) (ECF No. 1). Kalshi's argument is that federal law (specifically, the Commodity Exchange Act) preempts state regulation of Kalshi's sports bets. *Id.*

The district court ultimately rejected that argument. It held that Kalshi is unlikely to succeed on its preemption argument and found that the equities do not tip in Kalshi's favor. *Hendrick*, 2025 WL 3286282, at *1, *3, *14. The court explained that Kalshi's preemption argument fails at the outset because its contracts are not commodity derivatives and so they are not within the "exclusive jurisdiction" of the Commodity Futures Trading Commission (CFTC). *Id.* at *6–12. The court also found that "the balance of hardships tips in favor of the Board," as does "the public interest." *Id.* at *3. The court explained that Kalshi's continued unlicensed operation deprives Nevada of needed revenue, gives Kalshi an unfair advantage over law-abiding competitors, and harms the public. *Id.* at *13-14.

Kalshi appealed the preliminary-injunction decision to this Court, and oral argument is scheduled for April 16, 2026. *See KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir. oral argument scheduled for Apr. 16, 2026).

In the four months since the district court's decision, Kalshi has filed a flurry of documents in multiple courts to try to prevent a state enforcement action. It sought a stay pending its preliminary-injunction appeal from the district court, which the district court denied. *KalshiEX, LLC v. Hendrick*, 2025 WL 3642346, at *1 (D. Nev. Dec. 16, 2025). It then sought a stay pending appeal and an administrative stay from this Court; this Court denied the administrative stay, *see* No. 25-7516, ECF No. 69.1, and has not ruled on the stay pending appeal, *see* No. 25-7516, ECF No. 42.1 (referring stay motion to merits panel).

4. In the meantime, Kalshi continued to expand its business dramatically. *See, e.g.*, Dustin Gouker, *Kalshi Now Lets You Bet on Dozens of International Soccer and Basketball Leagues*, Event Horizon (Jan. 26, 2026), perma.cc/448F-B2QL; Nicola M. White, *Sports App Sleeper to Partner With Kalshi on Prediction Markets*, Bloomberg Law (Feb. 6, 2026), perma.cc/W9YY-UP4T. It also continued to (incorrectly) advertise its products as "legal in all 50 States," @Kalshi, X (Jan. 13, 2026), bit.ly/40v1qHt (capitalization altered), and took out an enormous billboard on the Las Vegas Strip in advance of the Super Bowl, @vegasstarfish, *Kalshi Taking Over Las Vegas*, YouTube (Feb. 5, 2026), bit.ly/4ku6iGb.

Kalshi's efforts led to a surge in users and trading volumes. In January 2026, Kalshi's app was downloaded over 3 million times—more than DraftKings' and FanDuel's apps combined. *See* Ira Boudway &

Denitsa Tsekova, *Kalshi Downloads Zoom Past Gambling Apps Ahead of Super Bowl*, Bloomberg Law (Feb. 5, 2026), perma.cc/U2AF-ND5U. Kalshi's 30-day trading volume exceeded $10 billion. Dustin Gouker, *The Handle: Inside Kalshi's First $10 Billion Month*, The Closing Line (Feb. 10, 2026), perma.cc/E4G5-6XLZ. On Super Bowl Sunday alone, Kalshi reported over $1 billion in wagers—27 times more than it reported for the 2025 Super Bowl. Anna Betts, *Prediction Market Kalshi Reached $1bn in Trading Volume During Super Bowl*, Guardian (Feb. 10, 2026), perma.cc/KDU4-ER7R. In contrast, betting volumes at Nevada's licensed sportsbooks declined nearly 15% from 2025, hitting a ten-year low. Sam McQuillan, *Super Bowl Betting Results Mask Game's Real Financial Story*, Legal Sports Report (Feb. 10, 2026), perma.cc/F8FQ-V4YR. Thus, Kalshi has expanded its unlicensed gambling business, to the detriment of competitors that follow the rules and are licensed in Nevada.

Kalshi also told the district court that it would not stop operating in Nevada until the Board brought a state enforcement action and obtained an order enjoining Kalshi's operations. *See* Reply in Supp. of Stay Mot. at 9, *KalshiEX, LLC*, *supra*, No. 25-cv-575 (ECF No. 262).

5. Kalshi's continued expansion of its business and marketing, along with the corresponding increased harm to the State, its gaming industry, and the public, led the Board to pursue this civil enforcement action against Kalshi. Because Kalshi's stay motion was still pending with this Court at the time, the Board notified the Court one week before

it filed this action. *See* No. 25-7516, ECF No. 60.1. In response, Kalshi filed an emergency motion for an administrative stay, which this Court denied. *See* No. 25-7516, ECF No. 69.1.

On February 17, 2026, the Board initiated this lawsuit in state court to enforce Nevada's gaming laws against Kalshi. *See* ECF No. 8-1. The Board moved for an *ex parte* temporary restraining order and a preliminary injunction, explaining that Kalshi's unlicensed operations cause severe and irreparable harm to the State, its gaming industry, and the public, and that Kalshi has been given ample notice of its obligation to comply with Nevada law (or cease offering its unlawful event contracts in the State). *See* ECF No. 8-2, at 7–13.

Kalshi immediately filed a notice of removal. *See* ECF No. 1. In that notice, Kalshi removed the case to federal court "pursuant to 28 U.S.C. §§ 1331, 1441." *Id.* at 2. It asserted three grounds for removal, arguing that (1) the Board's state-law claims raise federal questions, *id.* ¶¶ 15–22; (2) the CEA completely preempts the Board's state-law claims, *id.* ¶¶ 23–25; and (3) under state law, the Board should have joined the CFTC as a necessary party, *id.* ¶¶ 26–27.

6. On March 2, 2026, the district court rejected all of Kalshi's asserted grounds for removal and remanded the case. ECF No. 45. Kalshi filed a notice of appeal, *see* ECF No. 47, and moved for a stay of the remand order, *see* ECF No. 49. The district court recalled its remand

order for the limited purpose of considering Kalshi's stay motion. *See* ECF No. 50.

Then Kalshi sought to amend its notice of removal, apparently because it recognized that it had not removed the case on any appealable ground. *See* 28 U.S.C. § 1447(d) (remand order "is not reviewable on appeal or otherwise" unless the case "was removed pursuant to section 1442 or 1443" of title 28). Kalshi filed an amended notice of removal that attempted to "clarif[y]" that it had "properly 'invoke[d]' § 1442" as a basis for removal. ECF No. 58, at 4; *see* ECF No. 57 (amended notice). The Board moved to strike that notice. ECF No. 60.

On March 12, 2026, the district court denied Kalshi's stay motion. ECF No. 63. The court held that Kalshi had not shown a likelihood of success on the merits of its appeal, including because Kalshi "did not seek removal under 28 U.S.C. § 1442" and thus lacked any right to appeal. *Id.* at 3–4. The court *sua sponte* struck Kalshi's amended notice of removal because it determined that it lacked jurisdiction to consider the amended notice. *Id.* at 3. The court then remanded the case to the state court. ECF No. 63 (docket entry).

## ARGUMENT

The Court should dismiss this appeal for lack of appellate jurisdiction. Under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise" unless the case "was removed pursuant to section 1442 or

9

1443 of" title 28.  28 U.S.C. § 1447(d); *see Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 934 (9th Cir. 2010).  Kalshi now contends that it removed the case under Section 1442, the federal officer removal statute.

Kalshi's notice of removal did not invoke Section 1442 as a ground for removal.  In order to invoke Section 1442, a notice of removal must "assert the case is removable in accordance with or by reason of" Section 1442, first "by citing § 1442 as one of its grounds of removal" and then by providing "sufficient facts" to make out a claim for federal-officer removal under Section 1442.  *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1122–23 (9th Cir. 2023) (internal quotation marks omitted).  The claim must be "colorable"; a "bare . . . invocation" of the statute does not count.  *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021).  Kalshi's notice of removal here did not invoke Section 1442 as a ground for removal.

First, Kalshi did not cite Section 1442 as a ground of removal. Kalshi's notice of removal cited only Sections 1331 and 1441 as grounds for removal—not Section 1442.  Specifically, Kalshi stated it was removing the action "pursuant to 28 U.S.C. §§ 1331, 1441."  ECF No. 1, at 2.  Section 1331 grants district courts federal-question jurisdiction. *See* 28 U.S.C. § 1331.  Section 1441 provides that a civil action brought in a state court is removable if a federal district court would have original jurisdiction over the action.  *Id.* § 1441(a).  Thus, as the district court explained in ruling on Kalshi's stay motion, Kalshi simply "did not seek removal under Section 1442 in its Notice."  ECF No. 63, at 3.

Notably, Kalshi's notice of removal referred to Section 1442 only once, in passing. Kalshi's third asserted ground for removal was that the district court has federal-question jurisdiction under 28 U.S.C. § 1331 because the Board should have named the CFTC as a party under Nevada state law. ECF No. 1, ¶¶ 26–27. Kalshi argued that if the Board *had* named the CFTC, that "would have provided yet another basis for removal. *See* 28 U.S.C. § 1442(a)(1)." ECF No. 1, ¶ 27. That bare *see* citation is the sole reference to Section 1442 in Kalshi's notice of removal. As the Second Circuit has explained, "a removing defendant cannot create appellate jurisdiction through mere citation to § 1442." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 606 (2d Cir. 2014); *accord Friedenberg*, 68 F.4th at 1122–23.

Second, Kalshi did not assert facts that would support a claim of federal-officer removal under Section 1442. For jurisdiction under the federal officer removal statute, the defendant must show that (1) the defendant is a federal officer or "acting under" a federal officer; (2) the plaintiff's claims relate to acts under color of federal office; and (3) the defendant has a colorable federal defense. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). Kalshi did not allege that any of those requirements are met. It did not even allege the threshold requirement—that the actions at issue are those of a federal officer or a person who "acted under color of federal office." *Friedenberg*, 68 F.4th at 1123–24.

Kalshi's theory is *not* that it is acting under the direction of the CFTC. Rather, Kalshi's theory is that if the Board had joined the CFTC as a defendant, then *the CFTC* could have removed the case to federal court under Section 1442. So there is a mismatch between the asserted ground for removal and the party removing the case. That is, even if Kalshi were correct about the need to join the CFTC, that would not give *Kalshi* the right to remove the case under the federal officer removal statute; that statute permits only "[t]he United States or any agency thereof or any officer (or any person acting under that officer)" to remove the case to federal court. 28 U.S.C. § 1442(a); *see id.* (a case against a federal officer or one acting under the officer "may be removed *by them*" (emphasis added)). A private co-defendant that is not acting under a federal officer cannot remove the case on the officer's behalf. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("[T]he federal officer is the only one entitled to remove under § 1442."); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018) (holding that a co-defendant that was not a federal officer "could not have asserted federal officer jurisdiction on [the federal officer defendant's] behalf"). Kalshi thus cannot invoke Section 1442 on the CFTC's behalf.

In the district court, Kalshi attempted to cure its failure to invoke Section 1442 by filing an amended notice of removal *after* the district court had issued its remand order and Kalshi had filed a notice of appeal.

12

*See* ECF No. 57. The district court struck the amended notice. *See* ECF No. 63, at 3–4. That was correct for two reasons. First, the court lacked jurisdiction to consider the amended notice, because it already had remanded the case (and then recalled the remand only for the limited purpose of considering a stay). *See Loc. Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir.), ("[R]emovability is generally determined as of the time of the petition for removal."), *aff'd*, 488 U.S. 881 (1988). Second, and in any event, the amended notice did not establish a basis for appellate jurisdiction. In the amended notice, Kalshi inserted "1442" into the opening paragraph as a ground for removal but did not add any arguments about how it met the three requirements for federal officer removal jurisdiction. ECF No. 57, at 2. So, the notice still would be insufficient to invoke Section 1442 as a grounds for removal. *See Friedenberg*, 68 F.4th at 1122–23.

Kalshi thus did not invoke Section 1442 as a basis of removal. As a result, this Court lacks jurisdiction over this appeal.

/ / /

/ / /

/ / /

## CONCLUSION

The Court should dismiss this appeal for lack of jurisdiction.

Dated:  March 13, 2026                    Respectfully submitted,

Aaron D. Ford
Attorney General of Nevada

 /s/ *Jessica E. Whelan*
Jessica E. Whelan
  Chief Deputy Solicitor General—
  Litigation
Sabrena K. Clinton
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this motion:

(i)     complies with the type-volume limitation of Rule 27(d)(2) because it contains 3,221 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: March 13, 2026                     /s/ *Jessica E. Whelan*
                                          Jessica E. Whelan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 13, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 13, 2026        /s/ *Jessica E. Whelan*
                                           Jessica E. Whelan