No. 26-1304

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,

*Plaintiff-Appellee*,

v.

KALSHIEX, LLC,

*Defendant-Appellant*,

On Appeal from the United States District Court for the
District of Nevada, No. 2:26-cv-00406 (Hon. Miranda M. Du)

**PLAINTIFF-APPELLEE'S OPPOSITION TO
EMERGENCY MOTION FOR STAY PENDING APPEAL**

Aaron D. Ford
  Attorney General of Nevada
Jessica E. Whelan
  Chief Deputy Solicitor
  General—Litigation
Sabrena K. Clinton
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

BACKGROUND ...................................................................................... 2

LEGAL STANDARD ............................................................................... 7

ARGUMENT .......................................................................................... 8

I.   KALSHI IS NOT ENTITLED TO A STAY PENDING APPEAL ...... 8

   A.   Kalshi Has No Likelihood of Success on the Merits ................. 8

      1.   Kalshi lacks the right to appeal .......................................... 8

      2.   Kalshi has not shown a likelihood of success on the
          merits ................................................................................. 10

   B.   The Balance of Hardships and Public Interest Weigh
      Heavily Against a Stay Pending Appeal ................................ 15

II.  KALSHI IS NOT ENTITLED TO AN ADMINISTRATIVE
   STAY .................................................................................................. 19

CONCLUSION ...................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Acad. of Country Music v. Continental Cas. Co.*,
   991 F.3d 1059 (9th Cir. 2021) ........................................................ 16

*Ah Sin v. Wittman*,
   198 U.S. 500 (1905) ...................................................................... 19

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   148 F.4th 648 (9th Cir. 2025) ...................................................... 17

*California ex rel. Harrison v. Express Scripts, Inc.*,
   139 F.4th 763 (9th Cir. 2025) ............................................. 15, 16, 17

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ...................................................................... 11

*Cunningham v. Cornell Univ.*,
   604 U.S. 693 (2025) ...................................................................... 13

*Doe #1 v. Trump*,
   944 F.3d 1222 (9th Cir. 2019) ................................................... 8, 19

*Doe v. Uber Techs., Inc.*,
   90 F.4th 946 (9th Cir. 2024) ........................................................ 14

*Edwards v. Emperor's Garden Rest.*,
   130 P.3d 1280 (Nev. 2006) ............................................................ 12

*Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*,
   644 F.2d 1310 (9th Cir. 1981) ...................................................... 10

*Fellowship of Christian Athletes v. San Jose Unified School Dist. Bd. of
   Educ.*,
   82 F.4th 664 (9th Cir. 2023) ........................................................ 19

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) ...................................................................... 12

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
   98 F.4th 1180 (9th Cir. 2024) ................................................... 7, 19

*Flynt v. Bonta*,
   131 F.4th 918 (9th Cir. 2025) ...................................................... 19

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                  **Page(s)**

*Franchise Tax Bd. v. Constr. Labs. Vacation Tr.,*
   463 U.S. 1 (1983)................................................................16

*Friedenberg v. Lane Cnty.,*
   68 F.4th 1113 (9th Cir. 2023) .........................................9

*Georgia Gambling Recovery LLC v. Kalshi Inc.,*
   2026 WL 279375 (M.D. Ga. Feb. 3, 2026) ...................13, 14

*Haddad v. State,*
   2011 WL 1225795 (Nev. Jan. 13, 2011)............................13

*Houston v. Moore,*
   18 U.S. (5 Wheat.) 1 (1820)...............................................12

*Hubbard v. City of San Diego,*
   139 F.4th 843 (9th Cir. 2025) ..........................................19

*KalshiEX, LLC v. Hendrick,*
   2025 WL 3286282 (D. Nev. Nov. 24, 2025)..............3, 18, 19

*KalshiEX, LLC v. Hendrick,*
   2025 WL 3642346 (D. Nev. Dec. 16, 2025) .........................4

*Morgan v. Huntington Ingalls, Inc.,*
   879 F.3d 602 (5th Cir. 2018)............................................10

*Murphy v. NCAA,*
   584 U.S. 453 (2018)..........................................................19

*Nat'l Urban League v. Ross,*
   977 F.3d 698 (9th Cir. 2020)..............................................8

*Nationwide Biweekly Admin., Inc. v. Owen,*
   873 F.3d 716 (9th Cir. 2017)............................................17

*Negrete v. City of Oakland,*
   46 F.4th 811 (9th Cir. 2022) ............................................11

*Nevada v. Bank of Am. Corp.,*
   672 F.3d 661 (9th Cir. 2012)............................................16

iii

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                 **Page(s)**

*Nken v. Holder,*
    556 U.S. 418 (2009)............................................................7, 8

*Providence Journal Co. v. FBI,*
    595 F.2d 889 (1st Cir. 1979) ..........................................16

*Talley v. Mathis,*
    453 S.E.2d 704 (Ga. 1995) .............................................13

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025)........................................................17

*United States v. Carey,*
    929 F.3d 1092 (9th Cir. 2019) ......................................13

*United States v. Texas,*
    144 S. Ct. 797 (2024) .......................................................7

*Veneruso v. Mount Vernon Neighborhood Health Ctr.,*
    586 F. App'x 604 (2d Cir. 2014) .....................................9

*Wells v. Bank of Am.,*
    522 P.2d 1014 (Nev. 1974) ............................................14

**Statutes and Regulations**

28 U.S.C. § 1331 ...................................................................5, 9

28 U.S.C. § 1441 ...................................................................5, 9

28 U.S.C. § 1442 ........................................................6, 8, 9, 10

28 U.S.C. § 1442(a) ................................................................10

28 U.S.C. § 1442(a)(1).............................................................9

28 U.S.C. § 1447(d) .............................................................1, 8

Nev. Gam'g Comm. Reg. 22.1205(2)........................................3

NRS § 30.030 .........................................................................15

iv

## TABLE OF AUTHORITIES
### (continued)

**Statutes and Regulations (continued)**        **Page(s)**

NRS § 30.130 ....................................................................... 14, 15

NRS § 463.0129(1)(a) .................................................................. 2

NRS § 463.086(1) ...................................................................... 12

NRS § 463.140(1) ........................................................................ 3

NRS § 463.160 ........................................................................... 11

NRS § 463.160(1) ................................................................... 2, 11

NRS § 463.343 ............................................................................ 3

NRS § 463.350(1)(a) ................................................................... 2

NRS § 463.373 ............................................................................ 2

O.C.G.A. § 13-8-3(a)–(b) ........................................................ 13

## Other Authorities

Anna Betts, *Prediction Market Kalshi Reached $1bn in Trading Volume During Super Bowl*, Guardian (Feb. 10, 2026) ....................................4

Dustin Gouker, *Kalshi Now Lets You Bet on Dozens of International Soccer and Basketball Leagues*, Event Horizon (Jan. 26, 2026) ..........4

Dustin Gouker, *The Handle: Inside Kalshi's First $10 Billion Month, The Closing Line* (Feb. 10, 2026) ...........................................4

Nicola M. White, *Sports App Sleeper to Partner With Kalshi on Prediction Markets*, Bloomberg Law (Feb. 6, 2026) .............................4

Sam McQuillan*, Super Bowl Betting Results Mask Game's Real Financial Story*, Legal Sports Report (Feb. 10, 2026) .........................5

## INTRODUCTION

This is a state enforcement action brought by the Nevada Gaming Control Board (Board). The defendant is KalshiEX, LLC (Kalshi), a company that offers sports betting in Nevada but refuses to comply with state gaming law. The Board filed this case in state court to obtain a court order requiring Kalshi to comply with state law. Kalshi removed the case to federal court. The district court found that Kalshi had no valid basis for removal and remanded the case to state court. Kalshi appealed, and now it seeks a stay pending that appeal.

The Court should deny Kalshi's motion. As the district court found, Kalshi is not likely to succeed on the merits of its argument that this case must be heard in federal court. In fact, this Court does not even have jurisdiction over this appeal under 28 U.S.C. § 1447(d). The Court can deny Kalshi's motion on that basis alone.

In any event, Kalshi cannot demonstrate irreparable injury, and the balance of equities favors the Board. As this Court already has held, a party is not irreparably injured by having to litigate its claims in state court as opposed to federal court. Further, as the district court found, granting a stay would cause serious and irreparable injury to the State, its gaming industry, and the public.

There is likewise no basis for an administrative stay here. An administrative stay is entered when necessary to preserve the status quo.

The status quo is Nevada enforcing its gaming laws, not Kalshi willfully violating those laws.

Kalshi makes various arguments about the ultimate merits, contending that federal law (specifically, the Commodity Exchange Act) preempts state regulation of its sports bets. But this appeal is not about the merits; it is about whether this case must proceed in federal court as opposed to state court. On that issue, the district court correctly concluded that Kalshi has no valid basis for removal; has no right to appeal the court's remand order; and has no right to a stay. Kalshi's newest motion is nothing but another attempt at delay; indeed, Kalshi barely addresses the district court's decisions. This Court should deny the motion.

## BACKGROUND

1. Nevada's gaming industry is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS § 463.0129(1)(a). Nevada law comprehensively regulates entities that conduct gaming activities in the State. Every entity conducting gaming is subject to a rigorous licensing process. *Id.* § 463.160(1). Licensed entities must pay taxes on gross gaming revenue derived from gaming activities accessible in the State. *Id.* § 463.373. And licensed entities must comply with many other requirements, including that they may not accept wagers from those under 21 years of age, *id.* § 463.350(1)(a), and must employ safeguards to ensure that wagers are not being placed on

2

an event by owners, coaches, players, or officials participating in the event, *see* Nev. Gam'g Comm. Reg. 22.1205(2).

The Board is statutorily charged with administering and enforcing Nevada gaming law. NRS § 463.140(1). To stop the unlawful operation of a gaming entity in Nevada, the Board is authorized to bring a civil action in state court in Carson City, Nevada, or the place where the company does business. *Id.* § 463.343.

2. Kalshi offers sports, election, and other event betting in Nevada, but does not comply with Nevada gaming law. *See* Dkt. 8-1 (Compl.) ¶¶ 2, 20, 26. In March 2025, the Board sent Kalshi a cease-and-desist letter, directing it to stop accepting wagers on sports and elections from persons inside Nevada without a gaming license. *Id.* ¶ 61.

In response, Kalshi filed a lawsuit in federal district court, seeking to enjoin the Board from enforcing Nevada gaming law against it. *See* Compl., *KalshiEX, LLC v. Hendrick*, No. 25-cv-575 (D. Nev. Mar. 28, 2025) (Dkt. 1). The district court ultimately denied preliminary-injunctive relief, finding that Kalshi is not likely to succeed on its federal preemption argument and that the equities do not tip in Kalshi's favor. *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *1, *3, *14 (D. Nev. Nov. 24, 2025). The court found that every day that Kalshi offers gambling in violation of Nevada law causes "substantial irreparable harms to the Board, the State of Nevada, the gaming industry in this state, and the public interest." *Id.* at *13. Kalshi appealed the

3

preliminary-injunction decision to this Court, and oral argument is scheduled for April 16, 2026. *See KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir. oral argument scheduled for Apr. 16, 2026).

3. In the four months since then, Kalshi has filed a flurry of documents in multiple courts to try to prevent a state enforcement action. It sought a stay pending appeal from the district court, which was denied. *KalshiEX, LLC v. Hendrick*, 2025 WL 3642346, at *1 (D. Nev. Dec. 16, 2025). It also sought a stay pending an appeal and an administrative stay from this Court; the Court denied the administrative stay, *see* No. 25-7516, Dkt. 69.1, and has not ruled on the stay pending appeal, *see* No. 25-7516, Dkt. 42.1 (referring motion to merits panel).

Even though the district court ruled against it and refused to grant a stay, Kalshi has continued to expand its business dramatically.[1] Kalshi's efforts led to a surge in users and trading volumes; in January 2026, its 30-day trading volume exceeded $10 billion.[2] On Super Bowl Sunday alone, Kalshi reported over $1 billion in wagers,[3] while betting volumes at Nevada's licensed sportsbooks declined nearly 15% from 2025,

---

[1] *See, e.g.*, Dustin Gouker, *Kalshi Now Lets You Bet on Dozens of International Soccer and Basketball Leagues*, Event Horizon (Jan. 26, 2026), perma.cc/448F-B2QL; Nicola M. White, *Sports App Sleeper to Partner With Kalshi on Prediction Markets*, Bloomberg Law (Feb. 6, 2026), perma.cc/W9YY-UP4T.

[2] *Dustin Gouker, The Handle: Inside Kalshi's First $10 Billion Month, The Closing Line* (Feb. 10, 2026), perma.cc/E4G5-6XLZ.

[3] Anna Betts, *Prediction Market Kalshi Reached $1bn in Trading Volume During Super Bowl*, Guardian (Feb. 10, 2026), perma.cc/KDU4-ER7R.

4

hitting a ten-year low.[4] Thus, Kalshi is expanding its unlicensed gambling business, to the detriment of competitors that are licensed in Nevada.

Kalshi told the district court that it would not stop operating in Nevada until the Board brought a state enforcement action and obtained an order enjoining its operations. Reply in Supp. of Stay Mot. 9, *KalshiEX, LLC*, *supra*, No. 25-cv-575 (Dkt. 262).

4. The Board brought this action in state court to stop Kalshi's unlawful operations. Because Kalshi's stay motion was still pending with this Court at the time, the Board notified the Court one week before it filed this action. *See* No. 25-7516, Dkt. 60.1. In response, Kalshi filed an emergency administrative-stay motion, which the Court denied. *See* No. 25-7516, Dkt. 69.1.

On February 17, 2026, the Board initiated this lawsuit in state court to enforce Nevada gaming law against Kalshi. *See* Compl. The Board moved for an *ex parte* temporary restraining order and a preliminary injunction. *See* Dkt. 8-2, at 7–13.

Kalshi immediately filed a notice of removal. *See* Dkt. 1. In that notice, Kalshi removed the case to federal court "pursuant to 28 U.S.C. §§ 1331, 1441." *Id.* at 2. It asserted three grounds for removal, arguing that (1) the Board's state-law claims raise federal questions, *id.* ¶¶ 15–

---

[4] Sam McQuillan, *Super Bowl Betting Results Mask Game's Real Financial Story*, Legal Sports Report (Feb. 10, 2026), perma.cc/F8FQ-V4YR.

5

22; (2) the CEA completely preempts the Board's state-law claims, *id.* ¶¶ 23–25; and (3) under state law, the Board should have joined the Commodity Futures Trading Commission (CFTC) as a necessary party, *id.* ¶¶ 26–27.

5. On March 2, 2026, the district court rejected all of Kalshi's asserted grounds for removal and remanded the case. Dkt. 45. Kalshi filed a notice of appeal, *see* Dkt. 47, and moved for a stay of the remand order, *see* Dkt. 49. The district court recalled its remand order for the limited purpose of deciding the stay motion. *See* Dkt. 50.

Then Kalshi sought to amend its notice of removal, apparently because it recognized that it had not removed the case on any appealable ground. Kalshi attempted to "clarif[y]" that it had "properly 'invoke[d]' § 1442" as a basis for removal. Dkt. 58, at 4; *see* Dkt. 57 (amended notice). The Board moved to strike that notice. Dkt. 60.

On March 12, 2026, the district court denied Kalshi's stay motion. Dkt. 63. The court held that Kalshi had not shown a likelihood of success on the merits of its appeal, including because Kalshi "did not seek removal under 28 U.S.C. § 1442" and thus has no right to appeal. *Id.* at 3–4. The court also *sua sponte* struck Kalshi's amended notice of removal because the court determined that it lacked jurisdiction to consider the amended notice. *Id.* at 3. With respect to the balance of equities, the court explained that Kalshi will not suffer an irreparable harm without a stay, because "litigating in state court is not a harm, let alone an

6

irreparable harm," and all of Kalshi's other claimed harms would apply regardless of whether this case is litigated in state or federal court. *Id.* at 4–5. The court also found that Kalshi's operations impose "substantial irreparable harms to the Board, the State of Nevada, the gaming industry in this state, and the public interest." *Id.* at 6. The court then remanded the case to the state court. Dkt. 63 (docket entry).

Kalshi filed the instant stay motion. ECF 6.1.

## LEGAL STANDARD

A stay is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted). To obtain a stay pending appeal, Kalshi must show that (1) it is likely to succeed on the merits of its appeal; (2) it will suffer irreparable harm absent a stay; (3) the balance of equities weighs in its favor; and (4) a stay serves the public interest. *Id.* at 434. At a minimum, Kalshi must show that it raised "serious questions" on the merits and that the balance of hardships "tips sharply" in its favor. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted).

Administrative stays "freeze legal proceedings" before "a ruling on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring) (internal quotation marks omitted). They should be granted "only" if necessary "to preserve the

7

status quo." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019); *see Nat'l Urban League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020).

ARGUMENT

## I.   KALSHI IS NOT ENTITLED TO A STAY PENDING APPEAL

None of the *Nken* factors are met here.  Kalshi does not have any right to appeal the district court's remand order, and it has not identified any error in the court's decision or serious question on the merits. Further, Kalshi is not harmed by having to litigate this case in state court, and the Board's strong interests and the public interest weigh heavily against a stay.

### A.   Kalshi Has No Likelihood of Success on the Merits

#### 1.   Kalshi lacks the right to appeal

As a threshold matter, Kalshi has no chance of success on the merits of its appeal because it does not have a right to appeal the remand order.  Ordinarily, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(d). A narrow exception exists when the case is "removed pursuant to section 1442"—the federal officer removal statute.  *Id.*  In order for this exception to apply, a notice of removal must "assert the case is removable in accordance with or by reason of" Section 1442, first "by citing § 1442 as one of its grounds for removal" and then by providing "sufficient facts" to make out a claim for federal-officer removal under

8

Section 1442. *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1122–23 (9th Cir. 2023) (internal quotation marks omitted).

Here, Kalshi's notice of removal cited only Sections 1331 and 1441 as grounds for removal—not Section 1442. Specifically, Kalshi stated it was removing the action "pursuant to 28 U.S.C. §§ 1331, 1441." Dkt. 1, at 2. Its notice referred to Section 1442 only once, in passing—it asserted that if the Board *had* named the CFTC as a defendant, that "would have provided yet another basis for removal. *See* 28 U.S.C. § 1442(a)(1)." *Id.* ¶ 27. That bare *see* citation is the sole reference to Section 1442 in Kalshi's notice of removal. "[A] removing defendant cannot create appellate jurisdiction through mere citation to § 1442." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 606 (2d Cir. 2014); *accord Friedenberg*, 68 F.4th at 1122–23. Thus, as the district court explained, Kalshi simply "did not seek removal under Section 1442 in its Notice." Dkt. 63, at 3.

Further, Kalshi did not assert facts that would support a claim of federal-officer removal under Section 1442. In particular, it did not allege the threshold requirement for federal-officer removal—that it is a federal officer or a person who "acted under color of federal office." *Friedenberg*, 68 F.4th at 1123–24. Instead, Kalshi's theory is that if the Board had joined the CFTC as a defendant, then *the CFTC* could have removed to federal court under Section 1442. Thus, there is a mismatch between the asserted ground for removal and the party removing the case.

9

The federal officer removal statute permits only "[t]he United States or any agency thereof or any officer (or any person acting under that officer)" to remove the case to federal court. 28 U.S.C. § 1442(a). A private co-defendant that is not acting under a federal officer cannot "assert[] federal officer jurisdiction on [the federal officer's] behalf." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018); *see Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("[T]he federal officer is the only one entitled to remove under § 1442.").

Kalshi thus did not invoke Section 1442 as a basis of removal. As a result, this Court lacks jurisdiction over this appeal.

### 2. Kalshi has not shown a likelihood of success on the merits

In any event, Kalshi has not shown a likelihood of success—or even a serious question—on the merits of its appeal. In the district court, Kalshi asserted three bases for federal-question jurisdiction, but it now focuses on only two: (1) that the Board's state law claims necessarily raise a federal question; and (2) that the Board was required under Nevada law to name the CFTC as a defendant. *See* Mot. 12–18. The district court carefully considered and rejected both arguments, and Kalshi identifies no error in that decision.

***Federal question.*** The Board filed this action in state court, seeking to enforce state gaming law and asserting only state-law causes

of action.  Compl. ¶¶ 62–82.  There is no federal claim on the face of the well-pleaded complaint.  If Kalshi believes it has a meritorious federal defense to the state-law claims, it is free to raise that defense in state court.  But as the district court recognized, a federal defense does not establish removal jurisdiction.  ECF 45, at 5.  It is well established that a case "may not be removed to federal court on the basis of . . . the defense of pre-emption," even if "both parties concede that the federal defense is the only question truly at issue."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see Negrete v. City of Oakland*, 46 F.4th 811, 817 (9th Cir. 2022).

Kalshi first argues (Mot. 13) that a state statute cited by the Board in its complaint (NRS § 463.160) incorporates federal law by requiring entities offering gaming in Nevada to obtain a "federal" gaming license.  *See* NRS § 463.160(1) (making it "unlawful" for any person to operate a sports pool in Nevada "without having first procured . . . all federal, state, county and municipal gaming licenses" that may be required).  But the Board's lawsuit in this case does not challenge Kalshi's lack of a federal license.  Dkt. 45, at 4.  The Board challenges only Kalshi's lack of a *state* license.  *Id.*

Kalshi's argument is that because it possesses a federal "license" (*i.e.*, its registration with the CFTC), it does not need to possess a state license.  *See* Mot. 13.  The district court correctly rejected this argument, explaining that "the Board does not contend that Kalshi lacks the

11

requisite federal license": "the Board's state-law claims relate strictly to state licenses," and "the Board can prove a violation . . . based solely on Kalshi's lack of a state license." Dkt. 45, at 4. No provision of state law says that having a federal gaming license exempts an entity from obtaining a state gaming license.

Kalshi then argues (Mot. 14) that another state statute (NRS § 463.086(1)) incorporates federal law by requiring entities offering gaming in Nevada to obtain a Nevada gaming license "[e]xcept as otherwise provided by law." NRS § 463.086(1). As the district court correctly explained, that reference to "law" in a Nevada statute refers to Nevada law. Dkt. 45 at 5; *see Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 42 (1820) (when a statute refers to "law" generally, the statute is presumed to refer "only . . . to the laws of the government" that enacted the statute). Kalshi relied on *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280 (Nev. 2006), but as the district court explained, that decision involved federal, not state, law. Dkt. 45 at 5.[5]

In any event, even if the "[e]xcept as otherwise provided" language were understood to incorporate federal law, that would only establish an affirmative defense to be raised and proved by the defendant, not an element of a statutory claim that could serve as a basis for removal. *See*

---

[5] Kalshi also cites (Mot. 14) *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982). But that case was about interpreting a federal regulation, not about how to interpret a reference to "law" in a Nevada statute as a matter of Nevada law.

*Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025) (explaining that the "general rule of statutory construction" is that "a special exception to the prohibitions of a statute" is an affirmative defense (internal quotation marks omitted)); *United States v. Carey*, 929 F.3d 1092, 1100 (9th Cir. 2019) (where a statute "broadly prohibits a set of activities" which clearly describe the offense, "and then offers a limited exception," the exception is an affirmative defense); *accord Haddad v. State*, 2011 WL 1225795, at *2 (Nev. Jan. 13, 2011) ("[A] statutory exception is an affirmative defense where the statute first defines an offense in unconditional terms and then specifies an exception to its operation."). And again, a federal defense does not create federal-question jurisdiction.

Finally, Kalshi cites (Mot. 15) *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), but as the district court explained, that decision "is neither binding or persuasive, in large part because the underlying state law is materially different," Dkt. 45, at 6. The Georgia law in *Georgia Gambling* provided that "[g]ambling contracts" were "void," and authorized recovery of "[m]oney paid . . . upon a gambling consideration" in connection with such contracts, O.C.G.A. § 13-8-3(a)–(b), and the Georgia Supreme Court had stated that whether a gambling contract was void under this provision "depends on whether the contract is unlawful under the law governing its validity," *Georgia Gambling*, 2026 WL 279375, at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). As a result, to succeed on its state-law claim, the

13

plaintiff had to prove that the challenged contracts were illegal under federal law. *See id.* at *2–3. Kalshi can identify no similar incorporation of federal law into the elements of the Board's state-law claims here.

Kalshi's assertion of federal-question jurisdiction thus is contrary to binding Ninth Circuit and Supreme Court precedent. Kalshi is not likely to succeed on the merits and has not raised any serious legal issue.

***Necessary party.*** Kalshi argues (Mot. 16–18) that the Board was required to join the CFTC as a necessary party under NRS § 30.130. But the Nevada Supreme Court has explained that NRS § 30.130 requires joinder only of those with a "legal interest" in the action—meaning those whose rights, duties, or obligations will be adjudicated in the action. Dkt. 45, at 9 (quoting *Wells v. Bank of Am.*, 522 P.2d 1014, 1018 (Nev. 1974)). The district court correctly recognized that the CFTC does not have that type of legal interest in this case: The Board seeks a declaration "narrowly directed at Kalshi under Nevada law" and "is not trying to enforce Nevada gaming law—or any state law—against the CFTC," so "the CFTC does not face any legal exposure." *Id.* at 9–10 (internal quotation marks omitted). The CFTC thus is not a necessary party under state law.

Kalshi disagrees (Mot. 18) with *Wells*'s interpretation of NRS § 30.130, but *Wells* is binding as a published precedent of the Nevada Supreme Court on the meaning of a Nevada statute. *See Doe v. Uber Techs., Inc.*, 90 F.4th 946, 949 (9th Cir. 2024). Kalshi also argues (Mot.

14

18) that *Wells* is distinguishable because it involved different facts. But *Wells* expressly set out the legal rule for joinder under NRS § 30.130 for a declaratory action under NRS § 30.030—and NRS § 30.130 is the precise statute Kalshi invokes here.

In short, Kalshi's argument is foreclosed by binding Nevada Supreme Court precedent, so Kalshi has no likelihood of success on the merits, nor has it raised a serious legal question on this argument, either.

## B. The Balance of Hardships and Public Interest Weigh Heavily Against a Stay Pending Appeal

Separately, Kalshi has not shown any irreparable harm, and its purported harms are dwarfed by the harms to the State and the public.

***Irreparable harm.*** The issue in this appeal is whether this enforcement action should proceed in federal court or state court. As the district court explained, "litigating in state court is not a harm, let alone an irreparable harm." Dkt. 63, at 4. This Court made exactly that point in *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763 (9th Cir. 2025), *cert. denied*, 2026 WL 79931 (U.S. Jan. 12, 2026), where it held that that courts should *not* automatically stay remand orders pending appeal.

The Court explained that state and federal courts both provide "forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms." *Express Scripts*, 139 F.4th at 770. The Court suggested that, if anything, the district court should

15

err on the side of denying the stay and allowing the case to proceed in state court. *Id.* And as particularly relevant here, both this Court and the Supreme Court have recognized that states have a strong sovereign interest in having state-law enforcement actions heard in their own courts; in those circumstances, the "balance of federal and state judicial responsibilities" favors state adjudication. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (internal quotation marks omitted); *see Franchise Tax Bd. v. Constr. Labs. Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).

Kalshi contends (Mot. 18–19) that proceeding in state court would "nullify[]" its right to an effective appeal in this case. That is wrong. This Court has explained that continuing litigation in state court during the pendency of an appeal from a remand order is the norm, not the exception. *Express Scripts*, 139 F.4th at 768–70. If the Court ultimately decides that this case belongs in federal court, the district court can recall its remand order post-appeal. *See Acad. of Country Music v. Continental Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021). Kalshi cites (Mot. 19) *Providence Journal Co. v. FBI*, 595 F.2d 889 (1st Cir. 1979), but that case is plainly distinguishable: It involved the disclosure of documents to the government, which once done cannot be undone. *Id.* at 890. A remand, in contrast, can be recalled.

Kalshi argues (Mot. 19–20) that allowing this case to proceed in state court could "undermine" its appellate rights in *Hendrick* because it

16

could be subject to inconsistent rulings from federal and state courts. But Kalshi created this risk by first filing its own declaratory judgment against the Board in federal court and insisting that the Board file a separate lawsuit to stop its unlawful operations. *See* p. 5, *supra*. Further, the state court is perfectly competent to address whether there is any need to take steps to mitigate the risk of inconsistent rulings. *Express Scripts*, 139 F.4th at 769.

Finally, Kalshi argues (Mot. 20) that it would suffer irreparable injury because it would need to litigate the same issues in two courts. But that is true of all appeals from remand orders. Dkt. 63, at 5. "[M]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (alteration and internal quotation marks omitted).

Kalshi is just seeking delay so that it can continue its unlawful operations. It has not shown that it will be irreparably harmed absent a stay.

**Balance of equities and public interest.** Kalshi admits (Mot. 21) that its requested stay would "halt" the Board's "enforcement action." A State "suffers a form of irreparable injury" "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of its people." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)). The

17

Board has a statutory obligation to "consistently and equitably" enforce Nevada gaming law to "protect the health, safety, morals, good order, and general welfare of gaming consumers." Order at 6, *Nevada v. Blockratize, Inc.*, No. 26-OC-00012-1B (Nev. 1st Jud. Dist. Jan. 29, 2026) (Polymarket TRO); *see Hendrick*, 2025 WL 3286282, at *13. Preventing the Board from doing so poses an affront to Nevada's sovereignty and intrudes on the democratic will of the people.

Further, both the district court in this case and in Kalshi's case against the Board have concluded that every day Kalshi operates in violation of Nevada law imposes "substantial irreparable harms to the Board, the State of Nevada, the gaming industry in this state, and the public interest," Dkt. 63, at 6 (quoting *Hendrick*, 2025 WL 3286282, at *13–14)—harms that far outweigh Kalshi's asserted harms. Kalshi's continued operation deprives Nevada of needed revenue, gives Kalshi an unfair advantage over its licensed competitors, and harms the public. *Hendrick*, 2025 WL 3286282 at *13–14. The state court similarly has concluded that the Board suffers immediate and irreparable harm when a prediction market allows persons within Nevada to wager on sports and other events through event-based contracts in violation of Nevada law. Polymarket TRO 6–7. As that court explained, "every day" matters "in a literal sense" in these cases: "A day means more consumers. More consumers mean more transactions. More transactions mean more potential harm." *Id.*

18

## II.  KALSHI IS NOT ENTITLED TO AN ADMINISTRATIVE STAY

The Court also should deny Kalshi's request (Mot. 23–24) for an administrative stay.

Administrative stays should be granted only to "preserve the status quo." *Doe #1*, 944 F.3d at 1223.  Kalshi suggests (Mot. 24) that the "status quo" is its unlicensed operations in the State, but that is wrong.  This Court has repeatedly explained that the relevant status quo is "the last uncontested status which preceded the pending controversy," not the situation immediately before the stay motion is filed.  *Flathead*, 98 F.4th at 1191 (internal quotation marks omitted); *see Hubbard v. City of San Diego*, 139 F.4th 843, 853 n.10 (9th Cir. 2025); *Fellowship of Christian Athletes v. San Jose Unified School Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023) (en banc).

Here, the relevant status quo is the Board enforcing Nevada gaming law against those offering unlicensed gambling in Nevada.  Kalshi offers sports wagers, and "everyone who sees them knows it"— including Kalshi, which has advertised itself as offering "legal sports betting in all 50 states."  *Hendrick*, 2025 WL 3286282, at *8 (internal quotation marks omitted).  Since the Founding, the regulation of gambling has been the prerogative of the States.  *Flynt v. Bonta*, 131 F.4th 918, 932 (9th Cir. 2025); *see Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905).  That includes sports betting, which Nevada has regulated for decades.  *See Murphy v. NCAA*, 584 U.S. 453, 461–62 (2018).  Thus, the

19

status quo is the Board enforcing Nevada's gaming laws against anyone who offers unlicensed sports betting within its borders. Dkt. 63, at 5. The status quo is not Kalshi offering unlicensed sports betting under a novel and untested theory of federal preemption. There is thus no basis to grant Kalshi an administrative stay.

## CONCLUSION

The Court should deny Kalshi's motion.

Dated: March 13, 2026        Respectfully submitted,

Aaron D. Ford
Attorney General of Nevada

/s/ *Jessica E. Whelan*
Jessica E. Whelan
  Chief Deputy Solicitor General—
  Litigation
Sabrena K. Clinton
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this motion:

(i)     complies with the type-volume limitation of Rule 27(d)(2) because it contains 5,011 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  March 13, 2026               */s/ Jessica E. Whelan*
                                     Jessica E. Whelan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 13, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 13, 2026               */s/ Jessica E. Whelan*
                                    Jessica E. Whelan